IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MILTON HARPER; RONNIE STEVENSON; JONATHAN MITCHELL, individuals, on behalf of themselves, and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>C.R. ENGLAND, INC., a corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING CLASS CERTIFICATION FOR THE PURPOSES OF SETTLEMENT**<br><br>2:16-cv-906<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Brooke C. Wells |

This case arises from the compensation and training-expense arrangements between Plaintiff Class Members and Defendant C.R. England, Inc. The court is now called on to rigorously analyze and determine whether Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23(a). To conduct its analysis, the court considers the Harper Named Plaintiffs' Renewed Motion for Final Approval of Class Action Settlement,[1] other court filings,[2] and a hearing transcript.[3] Because Plaintiffs supply no evidence of an "injury in fact," the court concludes Plaintiffs lack standing to assert claims arising from the training-expense arrangements (i.e., contract claims). The court further finds Rule 23(a)'s typicality requirement has not been satisfied because Plaintiffs supply no evidence Plaintiffs and Class Members share the same legal or remedial theory. Accordingly, Plaintiffs' Renewed Motion for Class Certification is DENIED.

---

[1] Dkt. 85.

[2] Dkts. 1, 34, 37, 45, 46, 65.

[3] Dkt. 67.

# BACKGROUND

The facts of this case are well-known to the parties and recounted in *Harper v. C.R. England, Inc.*[4] The Harper Named Plaintiffs assert various class claims arising from two distinct interactions with Defendant C.R. England. First, they assert wage claims stemming from the model C.R. England allegedly used to compensate them.[5] Second, they assert contract claims relating to training expenses they allegedly incurred while attending C.R. England's trucking school.[6]

The case is before the court on remand from the Tenth Circuit.[7] Previously, the district court held a fairness hearing,[8] granted approval of a proposed class settlement,[9] and certified a class for the purposes of class settlement.[10] That class consisted of all current and former truck drivers employed by C.R. England in the State of California from March 12, 2014 to October 6, 2016.[11] Objectors to the settlement appealed, arguing among other things that the district court erred in certifying the settlement class.[12]

Specifically, the Objectors challenged the validity and sincerity of Plaintiffs' contract claims. As to validity, the Objectors argued Plaintiffs' contract claims were invalid because the operative contracts were entered into before the start date of the Class period; covered by a prior

---

[4] No. 17-4008, 2018 WL 3860471 (10th Cir. Aug. 14, 2018).

[5] Dkt 1, Ex. 6; Dkt. 85 at 5–6.

[6] Dkt 1, Ex. 6; Dkt. 85 at 6.

[7] Dkt. 80; *see also Harper*, 2018 WL 3860471, at *8.

[8] Dkt. 66.

[9] Dkt. 70 at ¶ 6.

[10] *Id.* at ¶ 5.

[11] *Id.* at ¶ 1 & n.1.

[12] *Harper*, 2018 WL 3860471, at *7.

class-action release; outside the statute of limitations; or covered by a contractual release.[13] In support of this argument, the Objectors directed attention to Plaintiffs' decision to *not* submit a declaration or other admissible evidence showing Plaintiffs actually possess viable claims under a contract theory of liability.[14] Regarding sincerity (i.e., good-faith), the Objectors argued Plaintiffs added the contract claims to their Second Amended Complaint "by joint agreement of the parties in preparation for their settlement."[15] In essence, the Objectors maintained Plaintiffs' contract claims were meritless, and therefore atypical of the Class' meritorious claims.

The Tenth Circuit was unable to address the Objectors' arguments or otherwise review the appropriateness of class certification because the accompanying certification analysis was insufficiently thorough.[16] The Tenth Circuit vacated and remanded "for the district court to more meaningfully explain its bases for class certification."[17]

## ANALYSIS

### I. Plaintiffs fail to supply evidence they suffered an "injury in fact."

"It is axiomatic that an uninjured plaintiff cannot bring suit on behalf of an injured class."[18] The Objectors argue Plaintiffs lack standing to assert contract claims because Plaintiffs suffered no contract damages. Specifically, the Objectors argue Plaintiffs signed the contracts before the start of the Class Period and paid no contract expenses, liquidated damages, or

---

[13] *See* Dkt. 37 at 12–13; Dkt. 85 at 16–17.

[14] Dkt. 37 at 12; *Harper*, 2018 WL 3860471, at *7.

[15] *Harper*, 2018 WL 3860471, at *7.

[16] *Id.*

[17] *Id.* at *8.

[18] *Milonas v. Williams*, 691 F.2d 931, 937 (10th Cir. 1982) (citing U.S. Const. art. III, § 2, cl. 1; *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962)).

interest.[19] The Objectors argue Plaintiffs consequently suffered no "injury in fact" as constitutionally required for standing.[20]

Plaintiffs urge the court to find standing based solely on allegations in the pleadings.[21] But a party invoking federal jurisdiction bears the burden of establishing standing, and because it is not a "mere pleading requirement[] but rather an indispensable part of the plaintiff's case, [standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."[22] At the class certification stage, the party asserting standing must supply sufficient facts to satisfy each element of standing, including "injury in fact."[23] Because Plaintiffs supply only unsupported allegations, they fail to shoulder their evidentiary burden at the class certification stage to establish standing to assert contract claims. For this reason, the court may not certify Plaintiffs' contract claims.

**II. Plaintiffs fail to supply evidence supporting a finding of typicality.**

Class certification is appropriate only if the moving party satisfies the four requirements of Federal Rule of Civil Procedure 23(a) and one of the requirements of Rule 23(b).[24] Under

---

[19] Dkt. 85 at 15–16.

[20] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[21] Dkt. 85 at 16 ("Here, Plaintiffs have alleged that they were induced to enter the Contract by Defendant's misrepresentations and, pursuant to the Contract and related agreements, paid training-related expenses that Defendant was legally required to bear, liquidated damages upon terminating the Contract, and interest charged at usurious rates upon these expenses and damages. [Citations to the Second Amended Complaint]. These allegations standing alone are sufficient to demonstrate Plaintiffs' 'standing' for purposes of the analysis required by Rule 23."); *see also id.* at 17 ("Although the promissory notes Plaintiffs executed and the Contract Mr. Mitchell signed were executed before the Class Period, Plaintiffs still have standing to assert Contract-Related Claims that accrued during the Class Period based on the *allegedly* unlawful tuition expenses, liquidated damages or usurious interest charged during the Class Period.") (emphasis added).

[22] *Lujan*, 504 U.S. at 561.

[23] *See infra,* note 48.

[24] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).

4

Rule 23(a), class certification is appropriate only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." The party seeking class certification must "affirmatively demonstrate" compliance with Rule 23(a) by proving "that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."[25] The district court "has an independent obligation to conduct a rigorous analysis before concluding that Rule 23's requirements have been satisfied."[26]

The court turns first to typicality because the Objectors forcefully argue it is not satisfied.[27] The purpose of the typicality requirement is to guarantee there exists enough similarity between the claims of the named plaintiffs and class members to assure the named plaintiffs' pursuit of their own interests will necessarily benefit the class as well.[28] "Via the typicality requirement, Rule 23 harnesses selfishness as a mean to accomplish altruistic ends."[29] To satisfy typicality, the named plaintiffs must assert claims or defenses typical of the claims or defenses of the class.[30] Typicality may be satisfied even when the named plaintiffs and class members do not share identical claims or identical factual situations.[31] So long as the claims of

---

[25] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original); *Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009) ("District courts ensure Rule 23's provisions are satisfied by conducting a rigorous analysis, through findings, regardless of whether these findings necessarily overlap with issues on the merits.") (internal citations and quotation marks omitted).

[26] *Wallace B. Roderick Revocable Living Tr. v. XTO Energy*, 725 F.3d 1213, 1217 (10th Cir. 2013) (internal quotation marks omitted).

[27] *See supra* notes 12–15.

[28] *See Dukes*, 564 U.S. at 349 n. 5; 1 William B. Rubenstein, *Newberg on Class Action* § 3:28 (5th ed. 2018).

[29] *Newberg on Class Action* § 3:28.

[30] Fed. R. Civ. P. 23(a)(3).

[31] *Colorado Cross-Disability Coalition v. Abercrombie & Fitch*, 765 F.3d 1205, 1216 (10th Cir. 2010); *Devaughn*, 594 F.3d at 1198.

the named plaintiffs and class members share the same legal or remedial theory, typicality is satisfied.[32]

The Harper Named Plaintiffs advance, and C.R. England does not oppose for purposes of class settlement, three reasons they maintain why typicality is satisfied here. First, Plaintiffs contend the relevant inquiry for typicality is whether Plaintiffs and Class Members were subjected to the same risk of "being obligated to pay training-related expenses that should have been borne by [C.R. England], liquidated damages upon termination of the contract and interest charged at usurious rates upon these expenses and damages."[33] Plaintiffs offer *DG ex rel. Stricklin v. Devaughn* as support for that argument.[34]

In *Devaughn*, the Tenth Circuit affirmed a district court's finding that typicality was satisfied because: (1) the named plaintiffs and class members—all children in foster care—were allegedly at risk of being subjected to the same harmful practices, principally the defendant state officials' failure to adequately monitor the children's safety; (2) the interests of the named plaintiffs and class members were not significantly antagonistic to one another; and (3) the named plaintiffs alleged the defendants' "monitoring policies violate[d] their substantive due process rights to be free from harm while in state custody, the same legal theory that underlie[d] class members' corresponding claims."[35] Unlike in *Devaughn*, there exists insufficient evidence in this case from which to find the last two considerations are present, i.e., lack of antagonistic interests and shared legal theory.

---

[32] *Menocal v. GEO Group*, 882 F.3d 905, 917 (10th Cir. 2018) (citing *Colorado Cross-Disability Coalition*, 765 F.3d at 1216); *Devaughn*, 594 F.3d at 1198 (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).

[33] Dkt. 85 at 15.

[34] *Id.* at 14–15 (citing *Devaughn*, 594 F.3d 1188, 1199).

[35] *Devaughn*, 594 F.3d at 1199.

The absence of evidence forecloses a finding that the interests of Plaintiffs and Class Members are aligned. If Plaintiffs lack a sincere stake in their asserted contract claims, then there is a collision of antagonistic interests: for every dime of settlement funds allocated to the contract claims, there is a concomitant decrease in Plaintiffs' recovery for the wage claims.[36] Moreover, if Plaintiffs' stake in the contract claims is imaginary—because their claims are meritless—it is not necessarily in the interest of the Named Plaintiffs to fully litigate or negotiate the contract claims. Because the interests of Plaintiffs and Class Members may antagonistically clash, and because the dearth of evidence regarding the bona fides (i.e., validity and sincerity) of Plaintiffs' contract claims makes it impossible to find Plaintiffs and Class Members share the same legal theory, *Devaughn* lends no support to a finding of typicality here.

Second, Plaintiffs argue they satisfy typicality even if they did not suffer contract damages because the "vast majority of the Settlement Class (including most of the Objectors) did not pay any money to Defendant for any early termination of the Contract."[37] In other words, Plaintiffs' argument is "even if the Named Plaintiffs did not pay any tuition, neither did most Class Members." Hence, "rather than being atypical, to the extent Plaintiffs paid nothing in connection with the Contract, they would be in the exact same position as the vast majority of the Settlement Class."[38] But this position ignores the durability of debt, and its potential impact on Class Members.

Indeed, this oversight appears to be reflected in the method of distribution for settlement funds. At oral argument, the Named Plaintiffs' counsel intimated he did not consider any debt

---

[36] Of course, this analysis bears on the likely fairness of the settlement too. But that does not make the analysis irrelevant to typicality. The court's role in ensuring a settlement is fair, reasonable, and adequate is no substitute for the recovery-maximizing role played by Named Plaintiffs and their zealous counsel.

[37] Dkt. 85 at 17.

[38] *Id.*

7

owed by Class Members relevant for settlement purposes because debt is "not damages."[39] He stated that if class members "have some sort of litigation over [] debt or something like that, that is what the opt-out procedure is for and people avail themselves of that."[40] But the ability to opt-out is no substitute for the recovery-maximizing role played by named plaintiffs and their counsel. When considered alongside the terms for paying out settlement funds,[41] the remarks of the Named Plaintiffs' counsel raises legitimate concerns that, absent the safeguards provided by typicality, the interests of Class Members who owe debt were not fairly represented. However, the court need not reach the issue of the fairness of the settlement today because to the extent the Named Plaintiffs did not pay and do not currently owe anything in connection with a contract, they are in a different position than Class Members who paid money or currently owe debt in connection with a contract. Plaintiffs' second argument in support of typicality fails.

Third, Plaintiffs argue they share the same legal theory as the Class Members because Plaintiffs' contract "claims are identical to those of the Settlement Class members."[42] They maintain, "it is immaterial that Plaintiffs' claims may be subject to unique defenses or that Plaintiffs may not have suffered damages."[43] The Objectors counter that Plaintiffs made up the contract claims in coordination with C.R. England.[44] Given the Objectors' collusion argument, it is material whether Plaintiffs are subject to defenses and whether they suffered damages. Yet Plaintiffs finesse arguments in support of typicality without taking any stance on the bona fides

---

[39] Dkt. 67 at 70.

[40] *Id.*

[41] *See* Dkt. 85 at 8–9 (allocating funds based on the number of weeks worked regardless of the amount paid for tuition or debt incurred).

[42] Dkt. 85 at 18.

[43] *Id.*

[44] *Harper*, 2018 WL 3860471, at *7.

of their contract claims.[45]  At bottom, Plaintiffs hope mere allegations are sufficient to establish typicality, even in the face of challenges to the validity and sincerity of those allegations.[46]

But typicality "demand[s] undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."[47]  Hence, at least under the current circumstances, where the Objectors challenge the validity and sincerity of the contract claims, typicality cannot be satisfied on mere pleadings. To satisfy typicality, the Harper Named Plaintiffs were required to submit evidence they and the Class Members *in fact* share the same legal theory.[48]  Because Plaintiffs fail to submit such evidence, the court cannot find typicality present.[49]

---

[45] *See supra* pp. 6–8.

[46] *See supra* note 21.

[47] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

[48] *See Dukes*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.); *Tennille v. Western Union Co.*, 785 F.3d 422, 433 n.12 (10th Cir. 2015) (citing *Dukes* as holding a "party seeking class certification must be prepared to prove he meet all of Rule 23(a)'s class certification requirements"); *Vallario v. Vandehey*, 554 F.3d 1259, 1266 (10th Cir. 2009) (observing a district court may consider factors touching upon the merits of a case, so long as the merits of a movant's claims are not the focal point of the court's class certification analysis); *Newberg on Class Action* § 3:45 ("Most courts are both reluctant to certify a class where the case's merits seem implausible *and* reluctant to deny certification on the basis of a unique defense that seems implausible.").

[49] For the benefit of the parties, the court further notes the Tenth Circuit's analysis in *Tennille v. Western Union, Co.* suggests the Harper Named Plaintiffs could not satisfy Rule 23(a)'s adequacy requirement because the Named Plaintiffs likely face a procedural obstacle potentially preventing them from participating in a class action, whereas certain Class Members who did not sign arbitration agreements do not face the same or similar procedural obstacles. *See* 785 F.3d at 431–32.

**CONCLUSION**

In light of the foregoing, the court DENIES Plaintiffs' Renewed Motion for Final Approval of Class Action Settlement.[50]

SO ORDERED this 27th day of March, 2019.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[50] Dkt. 85.